UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


PETER WEAVER                    :

     v.                         :      No. 3:02cv1328(AHN)

JEFFREY P. APUZZO, ET AL.       :


RULING ON MOTION FOR SUMMARY JUDGMENT

     This is an action against Richard D. Tulisano, Esq.

("Tulisano"), an attorney affiliated with the firm Sorokin

Sorokin Gross Hyde & Williams, PC (the "Firm").[1]  The Plaintiff,

Peter Weaver ("Weaver") alleges in the complaint that Tulisano

breached a written contract which provided that Tulisano would

represent him in litigation to obtain compensation for damage to

a sculpture.

     Pending before the court is Tulisano's motion for summary

judgment.  For the following reasons, the motion [doc. # 16] is

GRANTED.

FACTS

     The following facts that are relevant to the summary

judgment motion are undisputed.  In May, 1996, Weaver, an artist

and "self-described sculptor," entered a ten-foot sculpture into

the Hollycroft International Exhibition ("Exhibition").  Weaver

---

[1]The complaint was also brought against Jeffrey P. Apuzzo,
another attorney associated with the Firm.  On June, 4, 2004,
Weaver moved to dismiss the claim against Apuzzo because the
evidence showed that Apuzzo did not have a separate contractual
relationship with him.

delivered and assembled the sculpture on the Foundation grounds.

Although the sculpture had never been appraised, Weaver offered

it for sale for $100,000.  Previously, the most that Weaver had

ever been paid for a piece of his work was approximately $1,500.

Weaver signed a contract with the Hollycroft Foundation

("Foundation") in which he agreed to pay a thirty percent

commission if the sculpture sold.  He also paid $35 to buy into a

group insurance policy issued for the Exhibition by Peerless

Insurance Company ("Peerless") and insured the sculpture for

$70,000.  On or about May 20, 1996, the sculpture was damaged

when, in severe weather conditions, it blew over and collided

with a large concrete planter.

On October 5, 1997, Tulisano met with Weaver at the Firm's

office to discuss his claim for damage to the sculpture.  On

October 8, 1997, Tulisano submitted a client retainer agreement

("Retainer Agreement") to Weaver.  The agreement was on Firm

letterhead, and stated in relevant part:

> The rules of professional conduct require that we
> enter into a fee agreement between you and Sorokin
> Sorokin Gross Hyde & Williams, PC concerning the matter
> referenced above. . . .  I will continue to be
> "Attorney-in-Charge of your file, but other Attorneys
> will be working on these files as well.  You have
> requested this Firm to represent you in the above-
> captioned matter and you have agreed to pay us for the
> time spent at your [sic] customary hourly rates upon
> such fees already established by myself and you under
> some separate agreement.  Such representation shall
> initially consist of representing you as follows:
> Damage to a sculpture.
> Our hourly rates on these matters will range from
> $140 to $225 for Attorneys and $60 to $75 for

    paralegals. . . . This fee agreement can only be
    modified by a written document signed by both parties.
    . . . You acknowledge receiving an executed duplicate
    original copy of this retainer. Please forward a
    signed copy to this office for our file. If you fail
    to return such a signed copy, it would indicate to us
    that you do not wish our office to represent
    you. . . . .

Neither Weaver nor Tulisano executed the agreement.

  Nonetheless, from October 1997, through June 1998, Tulisano

communicated with Peerless and the agent who wrote the policy

concerning Weaver's claim under the policy for damage to the

sculpture.  Peerless opened a claim file specifying the

Foundation as the insured and May 20, 1996, as the date of the

loss.

  On June 18, 1998, Tulisano referred the matter to Jeffrey

Apuzzo, Esq. ("Apuzzo"), another attorney at the Firm, to

evaluate for possible litigation, and to determine whether he

would handle it.  On July 16, 1998, Apuzzo wrote and asked Weaver

to contact him to discuss the matter.  On August 5, 1998, Apuzzo

sent Weaver a second letter, again asking Weaver to contact him.

On August 14, 1998, Apuzzo sent Weaver a third letter stating

that because Weaver had not responded to his letters, he assumed

that he did not wish to pursue a claim against Peerless, and

advising that he was closing the file.  Apuzzo also cautioned

Weaver that if he wished to pursue the claim in the future, he

might encounter a statute of limitations problem.

  On August 18, 1998, Weaver called Apuzzo.  He left a message

acknowledging that he had received Apuzzo's August 14th letter.

On August 26, 1998, Apuzzo wrote Weaver stating that he had

received the telephone message, but that he had closed his file

and returned it to Tulisano because he did not have time to

handle the matter.  Apuzzo said that because he was no longer

involved, Weaver should contact Tulisano.  Thereafter, however,

at Tulisano's request, Apuzzo sent Weaver another letter inviting

him to call if he wanted to pursue the claim and, if so, to

discuss an appropriate fee arrangement because he was unable to

handle the matter on a pure contingency fee basis.

On November 6, 1998, Apuzzo sent Weaver another letter

stating that "[a]s of the date of this letter, I have received no

response to my correspondence to you of October 28, 1998, in

which I asked you to call my office to schedule an appointment.

Having received no reply from you, I am again closing my file."

On June 18, 1999, Tulisano wrote Weaver reminding him that

Apuzzo had made many attempts to contact him about his claim.  On

June 21, 1999, Apuzzo also wrote to Weaver stating:

> As you will recall, during our telephone conversation
> of approximately one year ago, I indicated that I was
> not interested in pursuing this claim based upon the
> numerous letters which I had written to you and the
> fact that I had not heard from you in response to those
> letters.  So there is no misunderstanding, my position
> in this regard has not changed.  Therefore, I suggest
> if you are serious about pursuing your claims, you seek
> the services of another lawyer.  This firm can be of no
> assistance to you on this matter.

Again, on June 29, 1999, Tulisano wrote to Weaver stating:

-4-

> I did the  best I was able to, with what I had to work
> with.  I did not have any cooperation from the
> Insurance Company for the Hollycroft Foundation; and
> you were not able to provide me with the names and
> addresses of witnesses to contact.  Therefore I turned
> your file over to our litigation department in June of
> 1998. . . .  Since we have a relationship that has
> broken down with Attorney Apuzzo, our litigation
> attorney, I have no further control over this matter.
> We have spoken with him once again, as he is adamant
> about not reopening this file.  I am sorry to advise
> you that we can no longer be of assistance to you in
> this matter.  Therefore, we are returning your
> documentation and reiterating what Attorney Apuzzo has
> advised, and that is that you should obtain the
> services of another lawyer, if you are serious in
> pursing your claim.

In opposition to the motion for summary judgment, Weaver

submits that Tulisano agreed to represent Weaver in a negligence

action against the Foundation[2] on a contingency fee basis;

Tulisano corresponded with Weaver on many occasions concerning

his agreement to represent Weaver; Tulisano told Weaver that his

negligence claim against the Foundation was worth $100,000;

Weaver was very concerned about the statute of limitations and

repeatedly asked Tulisano about it; Weaver only received one

letter from Apuzzo and called Apuzzo immediately after receiving

it because he was outraged by Apuzzo's false accusation that he

was not interested in his case; and Weaver pressed Tulisano for a

very long time to work on his case, with no success.  In support

of these facts Weaver relies on his deposition testimony.  He

---

[2]Tulisano maintains that the scope of his representation of
Weaver did not include litigation, and that the alleged written
contract does not mention that he or the Firm would represent
Weaver in litigation.

-5-

submits no documentary evidence.  Notably missing is the alleged

correspondence between Weaver and Tulisano regarding Tulisano's

alleged agreement to litigate Weaver's claim and to do so on a

contingency fee basis.  Moreover, many of Weaver's alleged facts

contradict the allegations he makes in the complaint.  For

instance, although Weaver maintains that Tulisano agreed to take

his case on a contingency fee basis, the complaint alleges that

Weaver agreed to pay hourly fees up to $225 per hour.  Weaver

also alleges in the complaint that he entered into a written

contract with Tulisano on October 8, 1997, yet the only document

dated October 8, 1997 is the Retainer Agreement which is between

Weaver and the Firm of Sorokin Sorokin Gross Hyde & Williams,

P.C., which is not a party to this action.  Weaver also alleges

that he fully performed all of his obligations under the alleged

contract, yet he admits that he paid no fees to Tulisano or the

Firm.

### STANDARD

Summary judgment on a claim or defense will be granted when

the moving party demonstrates that there are no genuine issues as

to any material fact and that the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b);

Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986); Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986); Rattner v.

Netburn, 930 F.2d 204, 209 (2d Cir. 1991).  Summary judgment on a

claim shall be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the
affidavits . . . show that there is no issue as to any material
fact, and the moving party is entitled to a judgment as a matter
of law."  Fed. R. Civ. P. 56(c).  The party moving for summary
judgment bears the burden of establishing the nonexistence of any
genuine issue of material fact.  If there is any evidence in the
record based upon any source from which a reasonable inference in
the nonmoving party's favor may be drawn, the moving party cannot
obtain summary judgment.  See Celotex, 477 U.S. at 331.  "[T]he
mere existence of some alleged factual dispute between the
parties will not defeat an otherwise properly supported motion
for summary judgment; the requirement is that there be no genuine
issue of material fact."  Anderson, 477 U.S. at 247-48.  Whether
a fact is material depends on the substantive law of the claim
and "[o]nly disputes over facts that might affect the outcome of
the suit under the governing law will properly preclude the entry
of summary judgment."  Id. at 248.

Once a party moving for summary judgment has made a properly
supported showing as to the absence of any genuine issue as to
all material facts, to defeat summary judgment the nonmoving
party must come forward with proper evidence showing that there
is a genuine factual issue for trial.  See, e.g., Amnesty Am. v.
Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002); Goenaga
v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.
1995).  In the absence of such evidence going to issues on which

the non-moving party bears the burden of proof, the moving party
may simply point out the absence of evidence to support the
nonmoving party's case." Nora Beverages, Inc. v. Perrier Group
of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

DISCUSSION

Tulisano moves for summary judgment on the grounds that
Weaver cannot prevail on his claim for breach of a written
contract because the alleged contract is not enforceable.
Tulisano further maintains that this action, although couched as
a breach of contract to avoid a statute of limitations problem,
is in essence an attorney malpractice action and as such,
requires expert testimony to establish the standard of care and
proximate cause.  Thus, he argues, because Weaver has failed to
disclose an expert witness to testify as to the applicable
standard of care, causation and damages, Weaver cannot prevail.
In opposition, Weaver maintains that expert testimony is not
required because a jury does not need expert testimony simply to
determine that Tulisano was negligent by not filing suit on
Weaver's negligence claim within the statute of limitations
period.  At oral argument, Weaver's counsel further asserted that
he does not intend to offer expert testimony to establish that
Weaver would have prevailed on a negligence claim against the
Foundation because a jury would not need an expert to determine
that the Foundation was negligent.  Rather, he maintains that the
Foundation's negligence would be obvious from the fact that the

sculpture "fell over and broke."  The court disagrees.

Where a plaintiff alleges that a defendant negligently performed legal services and failed to use due diligence, the complaint sounds in negligence even though the plaintiff alleges a breach of contract.  In such a case, the contract claim is "nothing more than a negligence claim clothed in contract garb." J.S.T. Dev. Corp. v. Vitrano, No. CV030521168S, 2004 Conn. Super. Lexis 2136 (Conn. Super. Ct. June 22, 2004).  See also Gazo v. Stamford, 255 Conn. 245, 263 (2001) ("Putting a contract tag on a tort claim will not change its essential character."); Alexandru v. Strong, 81 Conn. App. 68, 79-80 (2004)(same); Celentano v. Grudberg, 76 Conn. App. 119, 125 (2003) (noting that a breach of contract action against an attorney is governed by the same principles as a negligence action).

Thus, regardless of the fact that Weaver alleges a breach of contract, Weaver's claim against Tulisano is governed by the same principles that govern a tort claim of attorney malpractice.  See Alexandru, 81 Conn. App. at 79-80 ("Notwithstanding that embedded in the language of the plaintiff's claim are the contractual rudiments of promise and breach, '[w]here the plaintiff alleges that the defendant negligently performed legal services and failed to use due diligence the complaint sounds in negligence, even though [the plaintiff] also alleges that he retained [the defendant] or engaged his services.'" (quoting Shuster v. Buckley, 5 Conn. App. 473, 478 (1985))).  See also Celentano, 76

-9-

Conn. App. at 120.

To recover on a legal malpractice claim in Connecticut, a plaintiff must establish "(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages. . . .  To prove causation and damages . . . the plaintiff must establish that the defendant['s] failure to file an action within the statute of limitations period caused [the plaintiff] harm because [the plaintiff's action] is now time barred."  Id. at 76-77 (quoting Mayer v. Biafore, Florek & O'Neill, 245 Conn 88, 92 (1998)).  A plaintiff alleging attorney malpractice must establish through expert testimony that the attorney's conduct "legally caused" his claimed injury.  See Distefano v. Milardo, 82 Conn. App. 838, 842 (2003); Dunn v. Peter L. Leepson, P.C., 79 Conn. App. 366, 369 (2003), appeal granted on other grounds, 270 Conn. 908 (2004); Somma v. Gracey, 15 Conn. App. 371, 374-75 (1988).  The test of legal, or proximate cause is whether the attorney's conduct was a substantial factor in bringing about the plaintiff's injury.  See Vona v. Lerner, 72 Conn. App. 179, 190 (2002).  The existence of proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection."  Destefano, 82 Conn. App. at 843 (quoting Somma v. Gracey, 15 Conn. App. at 374-75).  Moreover, in a malpractice case such as this where the underlying claim was not tried, the plaintiff "essentially has a double burden of proof.

First, [the plaintiff] must show that the attorney was negligent.

Second, [the plaintiff] must establish that the underlying claim

was recoverable and collectible." Alexandru, 81 Conn. App. at

77.

The only exception to the requirement of expert testimony

in attorney malpractice cases is where there is such an obvious

and gross want of care and skill that the attorney's neglect is

clear even to a lay person. See Davis v. Margolis, 215 Conn.

408, 416 n.6 (1990). Cf. Cook v. Williams & Pattis, No.

3:99cv2223(WWE), 2002 U.S. Dist. Lexis 27412, at *11-12 (D. Ct.

Aug. 27, 2002) (finding the exception applied and expert

testimony was not required to establish the attorney's wrongful

act or omission, but holding that expert testimony was required

to establish that the plaintiff would have prevailed on her

underlying claim).

Contrary to Weaver's argument, it would not be clear to a

lay person that Tulisano failed to exercise due care in handling

Weaver's claim and that his failure was the proximate cause of

Weaver's injury. Thus, this case does not fall within the

exception. Rather, to prevail in this malpractice action, Weaver

is required to present expert testimony to establish the

applicable standard of care and to evaluate Tulisano's actions in

light of that standard. In other words, Weaver must establish

through expert testimony that Tulisano was required, but failed

to institute litigation on Weaver's behalf within the applicable

statute of limitations period, that Tulisano's negligence was the
proximate cause of the damages claimed by Weaver, and that Weaver
would have been successful on his underlying claim.   See Mayer
v. Biafore, Florek & O'Neill, 245 Conn. at 92; Distefano, 82
Conn. App. at 842 (holding that a plaintiff in an attorney
malpractice case cannot prevail without expert testimony tending
to show that the attorney's breach proximately caused her
injury); Alexandru, 81 Conn. App. at 76 (same).

Contrary to Weaver's argument, his underlying negligence
claim against the Foundation is not as straight-forward as he
paints it.  The fact that Peerless would not pay Weaver's claim
under the insurance policy illustrates that it might not be a
simple task to establish, without expert testimony, that Weaver
would have been successful in a suit against the Foundation.
This is also true with respect to Weaver's claim that Tulisano's
want of skill and care was so obvious and gross that his neglect
to timely file suit against the Foundation would be clear even to
a lay person.  Rather, and in light of the fact that the scope of
Tulisano's representation of Weaver is disputed, expert testimony
is necessary to establish that under the terms of the alleged
contract and the unique facts of this case, Tulisano had a duty
to file suit on Weaver's behalf.  Cf. Celentano v. Grudberg, 76
Conn. App. 119, 125 (Conn. App. 2003) (noting that "an attorney
does not, by agreeing to represent or to provide professional
services to a client, impliedly contract to see the client's

claim through to conclusion.  To read an attorney-client
relationship to contain an implied promise to pursue a claim to
conclusion would lead to bizarre and untenable results.").  Thus,
determination of the standard of care required of Tulisano under
the facts of this case, as well as whether he breached that
standard of care requires knowledge that is beyond the experience
of an ordinary fact finder.  See id.; Alexandru, 81 Conn. App. at
76.

Because Weaver has not, and does not intend to offer at
trial any expert testimony to establish the essential elements of
his malpractice claim against Tulisano, his claim cannot be
sustained.  See Nora Beverages, Inc. v. Perrier Group of Am.,
Inc., 164 F.3d 736, 742 (2d Cir. 1998) (holding that summary
judgment is appropriate where the non-moving party fails to
present evidence as to issues on which he bears the burden of
proof).

Because the court finds that the absence of expert testimony
on the essential elements of Weaver's attorney malpractice case
warrants summary judgment in Tulisano's favor, there is no need
to address Tulisano's claim that the alleged contract is too
vague to be enforced.

<u>CONCLUSION</u>

For the foregoing reasons, Tulisano's motion for summary judgment [doc. # 16] is GRANTED.  The Clerk shall enter judgment for the defendant and close this case.

SO ORDERED this 30th day of March, 2005, at Bridgeport, Connecticut.

/s/_____
Alan H. Nevas
United States District Judge