1   of care if you want to use the Celantano Grudberg test
2   because it is, I think, really black letter law, that
3   blowing a statute of limitations is not something for
4   which you need an expert witness, because the Court
5   takes judicial notice of the statute of limitations,
6   and contrary to the argument of defense counsel, that
7   the agreement was for an insurance claim, the October
8   8' '97 document specifically does not so limit it.
9
10       The subject of representation is "damage to a
11  sculpture," period, so it clearly encompasses all
12  possible approaches. It might be taking the most
13  obvious of which is a lawsuit. Whether it's against an
14  insurance company or against the foundation, it's a
15  lawsuit. Statute of limitations in the lawsuit had
16  expired by the time Attorney Tulisano handed the file
17  to Attorney Apuzzo. It had already expired.
18       THE COURT: Did you submit any of the
19  correspondence between the parties, these exchanges
20  between the parties, as exhibits to your response to
21  the summary judgment motion?
22       MR. WILLIAMS: No, Your Honor. The exhibits
23  that are before the Court, however, do include, in
24  addition to that exhibit, the memo from Tulisano to
25  Apuzzo, and the affidavit of Tulisano in which he

1   states that over a period of time he engaged in a
2   number of activities and, pardon me, exchanges of
3   correspondence, but that's all that's before the Court.
4           THE COURT: So what was the arrangement
5   between the parties, contingency or hourly rate?
6           MR. WILLIAMS: It was contingency, and that
7   is indeed what Attorney Tulisano says in his June 18,
8   '98 memo, that it was contingency.
9           THE COURT: Again, an unsigned memo.
10          MR. WILLIAMS: That's correct, but created by
11  the defendant himself.
12          THE COURT: But never accepted by your
13  client?
14          MR. WILLIAMS: No, on the contrary. What he
15  states in that memo is that the client and I have
16  reached an agreement, and this is the agreement. I
17  will represent him on a contingency fee basis. That's
18  a writing which describes an agreement, and that is
19  sufficient, I --
20          THE COURT: But how do we know your client
21  agreed to that?
22          MR. WILLIAMS: My client says he did, which
23  is all you need.
24          When you have the party who's being sued in a
25  writing acknowledging the existence, in writing

1   acknowledging the existence of a contract, that's
2   enough, I submit, to go to the jury, and after all,
3   that's really all we're talking about here today, is do
4   we have enough to get this case to the jury?
5           THE COURT: Okay, go ahead, Mr. Williams.
6           MR. WILLIAMS: I think that's all I have,
7   unless Your Honor has additional questions.
8           MS. CIARLO: Your Honor, may I?
9           THE COURT: Sure.
10          MS. CIARLO: First of all, with respect to
11  the <u>Mac's Car City</u> case, I don't disagree with Mr.
12  Williams that <u>Mac's</u> says that you can bring a contract
13  action against an attorney, in addition to a negligence
14  action, or in lieu of such an action, but in a
15  subsequent case, <u>Caffery v. Stillman</u>, which I believe
16  Mr. Williams is familiar with, the appellate court
17  subsequently held that, you know, after recognizing the
18  holding in <u>Mac's</u>, stated that, but you can't, you know,
19  just couch your negligence claim as a contract claim.
20  If you do, then you're -- If you attempt to do that,
21  it's still a negligence claim, and therefore, the
22  three-year statute of limitations applies to your
23  claim.
24          With respect to Mr. Williams' argument
25  regarding a series of writings, he points to the

1  unsigned retainer agreement of -- which is Exhibit 5,
2  and a memo that was from Mr. Tulisano to Mr. Apuzzo
3  asking him to take a look at the matter for possible
4  litigation.
5      Mr. Williams says that this is not a new
6  cause of action.  I disagree with that, Your Honor.
7  The -- What Mr. Williams allege -- What the plaintiff
8  alleged in the complaint was that, number one, there
9  was an agreement -- a written agreement executed
10 between the parties on 10-8.  Not only that, the
11 agreement provided two things.  The agreement provided
12 that the defendant agreed to bring a negligence claim
13 against someone, it's not specified, within the
14 applicable statutory period.  Mr. Williams has pointed
15 to no document which demonstrates that there was such a
16 provision in that agreement, no proof.
17     Further, not only does he allege that there
18 was a written agreement entered into on October 8th, he
19 also alleges that it was an hourly fee agreement.  That
20 could only have referred to the retainer agreement
21 which was sent to Mr. Weaver on 10-8, and now, after
22 the fact, for the first time in the 56(a)(2) statement,
23 plaintiff is attempting to back paddle and have a bunch
24 of writings constitute some written agreement.  That
25 was not the cause of action that was brought here.  The

1  cause of action that was brought here for written
2  agreement was based on the retainer agreement that was
3  sent to Mr. Weaver on 10-8.
4          THE COURT: And, as a matter of fact, Mr.
5  Williams, to follow up on that point, in your brief you
6  allege or claim that that contract, the October 8th
7  contract, is just, and these are your words in your
8  brief, "An initial draft."
9          MR. WILLIAMS: That's correct. That's --I
10 think that it is clear, Your Honor, --
11         THE COURT: Well, if it's an initial draft,
12 how can it be a contract?
13         MR. WILLIAMS: Well, Your Honor, that goes
14 back to what I said in my earlier argument.
15         At the time the complaint was filed, it was
16 our belief that that was the four corners of the
17 agreement. Subsequently, it became clear that there
18 was more to it than that, and that's why at the summary
19 judgment stage, we submit evidence that goes beyond
20 that.
21         It seems to me that we are not, at this
22 stage, bound --
23         THE COURT: Don't you have to amend your
24 complaint?
25         MR. WILLIAMS: But that can be done, Your

1  Honor, at any time.  I don't have to -- In other words,
2  I don't have to amend the complaint to survive summary
3  judgment, as long as I'm able to give you enough
4  evidence to show you that we have a case that is -- for
5  which there's been adequate notice provided in the
6  complaint, that can go forward, and we can amend the
7  complaint at any time up to the start of the trial and,
8  of course, I would expect to do that if we get past the
9  summary judgment motion, Your Honor, but it's not a
10 prerequisite to survival of summary judgment, that the
11 complaint be amended now, because this isn't a motion
12 directed to the pleadings.
13         THE COURT:  What are you going to do about an
14 expert?  You intend to offer an expert?
15         MR. WILLIAMS:  I don't think that an expert
16 is needed, Your Honor.
17         THE COURT:  Well, are you going to offer one?
18         MR. WILLIAMS:  If the Court were to hold that
19 an expert was needed, I would offer an expert.  That's
20 the easiest thing in the world, to get an expert to say
21 the statute of limitations is two years, and he blew
22 the statute.
23         I mean, I could -- I can ask the Court to be
24 an expert and say, "Take judicial notice."
25         I really think that --

1       THE COURT:  Well, it's not up to me to --
2       MR. WILLIAMS:  -- barring a statute of --
3       THE COURT:  It's not up to me to tell you how
4  to try your case, or prove it or document it.  The
5  question is -- The issue has been raised that you --
6  that in order to pursue this claim, you have to have an
7  expert, so the question I'm asking you is do you or do
8  you not intend to offer an expert?
9       MR. WILLIAMS:  Yeah.  Your Honor, I will say
10 this.  As you know, the case of <u>Celantano v. Grudberg</u>,
11 upon which the defense relies, was decided after this
12 lawsuit was filed.
13      Up until <u>Celantano v. Grudberg</u>, there had
14 never been a case that had held that you needed an
15 expert witness on a breach of contract between a lawyer
16 and a client.  In -- So therefore, the deadline for
17 disclosing an expert came and went and I saw no need to
18 disclose one.
19      In the light of <u>Celantano v. Grudberg</u>, which,
20 of course, came down after, I think, -- even after this
21 motion was filed, at this point, yes, I would, to be on
22 the safe side, disclose an expert.
23      THE COURT:  Okay.  Go ahead.  I'm sorry, I
24 interrupted you.
25      MS. CIARLO:  Your Honor, I also disagree with

```
 1   Mr. Williams that this complaint provided adequate
 2   notice of what the plaintiff is -- have argued for the
 3   first time, in opposition to the motion for summary
 4   judgment, that there were some series of writings that
 5   constitute an agreement, and even assuming that Mr.
 6   Williams was correct that there was a series of
 7   writings which constituted some agreement, which I do
 8   not agree with, but assuming, for the sake of argument,
 9   that that were the case, there is no expressed
10   provision in that -- This is, as the plaintiff has set
11   it forth, a breach of contact claim.  What was that
12   contract?  What were the terms of that contract?  What
13   was Mr. Tulisano required to do pursuant to the terms
14   of that contract?
15           THE COURT:  Well, is it your understanding
16   that the claim -- part of the claim is that the
17   contract was ambiguous?
18           MS. CIARLO:  No, Your Honor.  My
19   understanding is that what Mr. Williams -- what the
20   plaintiff is claiming here, is that the defendant and
21   the plaintiff had a written agreement whereby the
22   defendant had agreed to bring a negligence action on
23   the plaintiff's behalf, and the plaintiff agreed to pay
24   the defendant an hourly fee of up to $225 an hour.
25           The plaintiff has alleged that in failing to
```

Case 3:02-cv-01328-AHN    Document 31-3    Filed 04/25/2005    Page 9 of 18

33

1  bring that negligence action, and because the statute
2  has now run for bringing such an action, the defendant
3  has breached the agreement.  The whole problem with
4  trying to defend this claim is that it is not a breach
5  of contract claim.  This is a negligence claim.
6       Now, it's couched in terms of breach of
7  contract.  If there was a contract, where is the
8  evidence demonstrating that that was a term of that
9  contract?
10      And as far as the jurisdictional amount goes,
11  the $70,000, Mr. Weaver did testify that he thought he
12  was entitled to $100,000, but he also testified that
13  all of his previous work had sold for somewhere in the
14  range of $1,000 to $1500.
15      Now, whether or not, you know, that's a
16  reasonable belief on his part, to have -- to believe
17  that he was entitled to a hundred thousand dollars for
18  this statue, but he wanted Mr. Tulisano to pursue the
19  insurance company for coverage under which he only
20  would have gotten $70,000, and there was a deductible
21  on top of that.
22      So I really don't see how he would have
23  gotten -- how he gets past the jurisdictional amount,
24  and I believe that the law is that yes, you go by
25  what's on the face of the complaint, if that -- there

```
 1  is a good faith basis for the plaintiff to allege that
 2  he has met the amount in controversy.  However, once
 3  it's challenged, I believe the burden is on the
 4  plaintiff to come forward with some evidence that tends
 5  to demonstrate that this is what the claim was worth,
 6  and I don't see any -- and if Mr. Williams doesn't
 7  intend to offer any testimony, other than that of Mr.
 8  Weaver's, I don't see him getting past the amount in
 9  controversy requirement.
10            Thank you, Your Honor.
11            MR. WILLIAMS:  Just to briefly --
12            THE COURT:  Yeah.
13            MR. WILLIAMS:  Just to briefly respond, first
14  to that point.
15            Of course it -- it's already been said, and
16  we all have to agree, Mr. Weaver is competent to
17  testify to the value of the sculpture, and he's already
18  so testified, and will again so testify at trial.
19  That's enough to take it to the jury, and that's
20  counsel's question, "Is there enough to take it to the
21  jury?", and the answer is obviously, "Yes."
22            One final point, Your Honor.  Counsel cited
23  the case of Caffery v. Stillman for the proposition
24  that if a contract action is worded in terms of
25  malpractice, it should be treated as a malpractice
```

1   action.  That, of course, is true, but the problem is
2   that this action is not so worded.  Unlike the <u>Caffery</u>
3   case, which spoke of an agreement to act within the
4   standard of care, that's not what this contract action
5   alleges, and that's what -- not what this one is about.
6   So this one is squarely within the four corners of
7   <u>Mac's Car City</u> and, Your Honor, I rely on that.
8           THE COURT:  Do you have to prove, Mr.
9   Williams, that if Mr. Tulisano had brought the action,
10  that he would have prevailed?
11          MR. WILLIAMS:  If it were a legal malpractice
12  action, the answer to that would be "Yes."
13          THE COURT:  So if it were a legal malpractice
14  action, you'd have to prove that, and the only way you
15  could prove that, of course, was -- is through expert
16  testimony, correct?
17          MR. WILLIAMS:  No.  No, that's not true.
18          THE COURT:  How would you prove it then?
19          MR. WILLIAMS:  It wouldn't -- Because if it
20  -- this is all hypothetical because this is not a legal
21  malpractice action, but I'll come back to that in a
22  moment.
23          If it were, what we'd have to prove is that
24  if he had filed the negligence action, he would have
25  won the negligence action.  He wouldn't need an expert

1   to prove that because you could simply prove that by
2   the problem that -- the promise of the gentleman who
3   ran the Hollycroft Foundation, which Mr. Weaver would
4   testify about, that everybody agreed this rock was a
5   danger to the sculpture, that if the sculpture blew
6   over it and we had to -- the sculpture was susceptible
7   to land, and if it would be destroyed on that rock,
8   that he promised he would remove that rock, that he
9   failed to remove that rock, and in failing to remove
10  that rock, of course, he created a dangerous condition.
11  High wind arose, the sculpture fell, hit the rock and
12  was destroyed. So I don't think you need a -- you
13  don't need an expert to prove that.
14          In terms of damages, once again, Mr. Weaver's
15  testimony on damages is sufficient to take his case to
16  a jury, so we would not need an expert for any of that.
17          This, of course, is a breach of contract
18  action, where we say he promised to bring the action.
19  We can prevail on liability without showing that the
20  action would have been successful; however, in terms of
21  damages, I suppose in order to get the hundred thousand
22  dollar damages we're talking about, we would need to
23  bring in the evidence that --
24          THE COURT: Well, that was gonna be my next
25  question. If it's not a legal malpractice claim, but

1   it's a breach of contract claim, what is -- and if you
2   prevail, let's assume, what is the measure of damages?
3           MR. WILLIAMS:  Unless we prove consequential
4   damages, we'd be limited to the contract -- the money
5   paid under the contract which, in this case, was
6   nothing, so we wouldn't do very well.  We'd have to
7   prove -- If we were going to collect our hundred
8   thousand dollars, we'd have to prove that indeed the
9   action would have produced that hundred thousand
10  dollars, and how we would prove that is exactly what I
11  just said, without an expert.
12          THE COURT:  Without an expert?
13          MR. WILLIAMS:  Don't need an expert.  Don't
14  need an expert.
15          As a matter of fact, it's almost -- it's
16  really a bailment action, isn't it, that he should have
17  brought, rather than a negligence action, because the
18  sculpture was in the custody of Hollycroft.  It was
19  damaged in the custody of Hollycroft, through not fault
20  of Weaver.  I don't know that you even need to prove
21  negligence there.
22          THE COURT:  Why did you sue the lawyers?  Why
23  didn't you sue the art dealer, whoever had custody of
24  it, for negligence?
25          MR. WILLIAMS:  Well, because by the time the

1    case left Mr. Tulisano's office it was too late.
2         THE COURT:  No but, I mean, initially, when
3    the damage occurred?
4         MR. WILLIAMS:  That's what he hired Tulisano
5    for, and Tulisano didn't do it.  That's why we're here.
6         Tulisano -- In fact, the statute of
7    limitation on that action expired before Tulisano even
8    gave the files to Apuzzo, so it's strictly on
9    Tulisano's watch that that happened.
10        MS. CIARLO:  Your Honor, I disagree with that
11   last representation of Mr. Williams.
12        If there was a bailment contract with the
13   Hollycroft people, that contract was created in May of
14   1996 when Mr. Weaver signed the agreement with
15   Hollycroft.  They had a signed agreement.  He would
16   have had six years to bring a breach of contract action
17   against the Hollycroft Foundation.  That would not have
18   run until 2002, three years after the representation of
19   Mr. Weaver was terminated.
20        THE COURT:  And when did Mr. Williams bring
21   this action?
22        MS. CIARLO:  July of 2002.
23        THE COURT:  And when would the statute have
24   run against the dealer?
25        MS. CIARLO:  Against?  I'm sorry, I didn't

```
 1   hear you, Your Honor.
 2           THE COURT:  When --
 3           MS. CIARLO:  I would say that it was a
 4   written contract.  There were --
 5           THE COURT:  So it would have run when?
 6           MS. CIARLO:  Six years.  It would have ran in
 7   May of 2002.
 8           Also, with respect to the expert testimony,
 9   Mr. Williams argues that this is a contract action,
10   therefore he doesn't need the expert testimony.  Yeah,
11   you can't have it both ways.  You can't say that this
12   is not a negligence action, this is strictly a contract
13   action.  You had a contractual obligation to do (a),
14   you didn't do it and you breached the contract, which
15   is what he's alleging here, and then at the same time
16   say that the want of care here, want of care, that goes
17   to negligence, was so gross and so obvious that he
18   doesn't need expert testimony.  That tells me that this
19   really is a tort action.  This is a negligence action.
20   There was no contract to do (a), which the defendant
21   failed to do, thereby breaching the contract.
22           THE COURT:  If you bring a breach of contract
23   action, which really should be -- should have been a
24   tort action, what law governs?  Contract law or tort
25   law?
```

```
 1            MS. CIARLO:  I would say the law would be
 2   interpretation of the pleadings, that as a matter of
 3   law Your Honor can look at the pleadings in this case,
 4   the complaint in this case, and say, "This is not a
 5   breach of contract action, this is, in essence, a
 6   malpractice action to which the three-year statute of
 7   limitation applied."  We're beyond the three-year
 8   statute of limitations.
 9            THE COURT:  What about that, Mr. Williams?
10   If you bring the action and you say it's a contract
11   action, it's a breach of contract action, but it's
12   really a tort, what law governs?  Contract law or tort
13   law?
14            MR. WILLIAMS:  It depends on the purpose for
15   which you're looking for law.  I think it's pretty
16   clear that for purposes of statute of limitations, it's
17   contract.  However, if the Court were to conclude that
18   the breach of contract that is alleged, consisted of a
19   failure to meet some standard of care, then although
20   applying the contract statute of limitations, the Court
21   would, at the same, apply the tort law concepts for
22   liability purposes.
23            At least that, I think, is what we can glean
24   out of a reading of a series of cases, including
25   Celantano, Caffery and Mac's Car City.  That's as best
```

1  as we can put it together, I would say, but in this
2  case it's useful to go back to the complaint that I
3  filed here, which does not sound in tort law.  It does
4  not speak of a standard of care.  The standard of care
5  language that we've been hearing throughout this
6  argument, is the creation of defense counsel in their
7  argument in this motion.  Now, they got a right to spin
8  this case any way they like, but that's not what the
9  complaint says.
10          THE COURT:  Okay.
11          MR. WILLIAMS:  Thank you, Your Honor.
12          THE COURT:  Thank you.
13      (Proceedings concluded.)
14
15
16
17
18
19
20
21
22
23
24
25

# C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*[Signature: Stephen C. Bowles]*     April 12, 2005

STEPHEN C. BOWLES